OPINION
PER CURIAM.
Cbane Toska petitions for review of an order of the Board of Immigration Appeals (“BIA”), which dismissed her appeal of the removal order of an Immigration Judge (“IJ”). We will deny the petition for review.
Cbane Toska is a native and citizen of Albania. She entered the United States in December 2004 on a visitor’s visa and stayed longer than permitted. Toska applied for asylum and related relief. Toska testified as follows.
Toska stated that she was persecuted in Albania due to her involvement with the Democratic Party. She joined the party in January 1991 and was involved in putting up posters, distributing literature, and she used the restaurant she and her husband owned for meetings. A.R. 89-90. She also participated in elections. The Democratic Party came into power in March 1992 and governed until 1997, when the Socialists took power. A.R. 113-14.
Toska testified that she was arrested on September 14, 1998 when she and her husband were returning from the funeral of a Democratic Party leader. She was held overnight and was beaten. The police threatened to kill her if she didn’t give up the Democratic Party. A.R. 108-12. She was next arrested on June 6, 2001 along with a friend during the electoral campaign. She was held for three hours, was threatened by the police, and was beaten. A.R. 105-08. She was arrested for the last time on September 24, 2003. Her restaurant was full of supporters of the Democratic Party, and the police came, shut down the restaurant, and arrested her. She was held for about five hours. They threatened her life and beat her. A.R. 103-04. On September 3, 2004 she was going to work when four people, who had made trouble at the restaurant the night before, came in front of her car and broke the windshield. They took her out of the car, hit her and threatened to kill her. Her leg was hurt and she sought care from a nurse or doctor in her home. A.R. 94- *631 101. She and her husband consulted a lawyer who advised them to leave Albania. A.R. 95. On October 13, 2004, her house was attacked with firearms and her dog was poisoned. A.R. 92-94. Toska then left for the United States. Her husband remains in Albania with the children. Toska testified that she was aware that the Democratic Party won in the 2005 election, but she stated that it was only a weak coalition that prevailed. She testified that she did not believe she would be safe if she were to return to Albania. A.R. 117.
Toska presented an affidavit from an expert on conditions in Albania who described conditions in Albania and who opined that Toska’s description of what happened to her was consistent with those conditions. Toska also presented a membership card for the Democratic Party and an affidavit from officials of the Democratic Party. She also submitted a receipt noting she had received medical treatment for 7 days in September 2004. The IJ found problems with some of her evidence. The affidavit from the Party did not describe any problems that Toska had personally had due to her membership, such as her arrests, even though she testified that she had informed party officials each time she had a problem.[1] The medical receipt simply said that she had been treated at home for seven days in September 2004, and does not say what her injury was. The receipt was not dated. A.R. 178-79.
The IJ believed that Toska was a member of the Democratic Party, that she owned a restaurant, and that she may have been insulted and have gotten in debates over her political activity. However, the IJ noted that there was no corroboration for her testimony concerning her arrests and injuries. The IJ noted that although she was in frequent contact with her husband, there was no affidavit or other corroboration from her husband. The IJ also noted that the lawyer she consulted in Albania could have provided an affidavit. The IJ also found that her testimony regarding the September 2003 arrest, that she was beaten, was inconsistent with her application, which only said she was threatened. The IJ did not believe that Toska had been persecuted in the past, and noted that with the Democrats in power, she was not likely to be persecuted in the future. The IJ also found no evidence that she would be tortured. The IJ denied relief, but granted voluntary departure. A.R. 57-72.
The BIA adopted and affirmed the IJ’s decision. The BIA affirmed the IJ’s adverse credibility finding, agreeing that Toska had failed to present reasonably available corroborative evidence and agreeing that the finding was supported by unexplained discrepancies. The BIA also found there was no evidence in the record that Toska would be tortured, and noted specifically that the Democratic Party was in power in Albania. The BIA extended Toska’s period for voluntary departure to 60 days from September 19, 2008. A.R. 3-4. Toska filed a timely, counseled petition for review.
Because the BIA relied on the IJ’s reasoning, the decisions of the BIA and the IJ both must be considered. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). Credibility determinations are reviewed under the substantial evidence standard. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir.2004). The Court must uphold the credibility determination unless “any reasonable adjudicator would be compelled to *632 conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B).- Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002).
Before denying asylum based on lack of corroboration, the agency must conduct a three-part inquiry: “(1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of the applicant’s explanation for its absence.” Toure v. Att’y Gen., 443 F.3d 310, 323 (3d Cir.2006) (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001)). Because the BIA did not conduct its own Abdidai inquiry and merely deferred to the findings of the IJ, this Court directly reviews the decision of the IJ. See Abdulai, 239 F.3d at 549 n. 2. The IJ’s findings are given considerable deference. The new language of 8 U.S.C. § 1252(b)(4), added by the REAL ID Act of 2005 provides that “no court shall reverse a determination made by a trier of fact with respect to availability of corroborating evidence ... unless the court finds ... that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.”
Toska argues that the IJ based his adverse credibility finding on one minor perceived inconsistency-—that her application simply said her life was threatened during her 2003 detention whereas she testified that she was beaten during that detention. Petitioner’s Brief at 10-11. One could argue that there is not really an inconsistency here; she may have felt her life was threatened, in part, by means of the beating. However, the IJ also based his adverse credibility finding in large part on the affidavit from the Democratic Party, which failed to mention that Toska had been arrested or beaten because of her political activities, even though she said she had informed them of all her troubles. A.R. 65-66. The record does not compel us to find that Toska was credible.
Further, even assuming she was credible, the IJ did not err in requiring corroboration for Toska’s claims. An alien’s credible testimony may satisfy the burden of proof for a claim for relief from removal. See Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir.2003). However, the BIA may require even “otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof.” Abdulai, 239 F.3d at 554. It is reasonable to expect corroboration about facts central to a claim and easily subject to verification. Id. It also is reasonable to expect letters from family members remaining in an applicant’s home country. See id. Toska did not provide any evidence from her husband, and her only explanation was that her attorney did not tell her to provide such evidence. The affidavit and medical receipt she did provide, while not contradictory, do not lend much support to her claims.
Although Toska’s testimony describes some significant instances of past persecution—beatings and detentions for her political activities, and having her house fired upon—we find that substantial evidence supports the IJ’s adverse credibility finding, and his finding that Toska did not provide reasonably available corroborative evidence.
Because Toska failed to meet the burden of proof required for asylum, we agree with the BIA that she necessarily failed to meet the higher burden of proof for statutory withholding of removal. We further agree that because her claim for relief under the Convention Against Torture is based on the same testimony that was found to be incredible, she has not established that it is more likely than not that *633 she will be tortured upon her return to Albania. We will therefore deny the petition for review.

. The affidavit simply states that Toska and her husband were originally from the NorthEast of the country, that they had been insulted by the ‘‘aborigines,” and that there had been “events of bickering and arguments with residents.” A.R. 192.